**Betty HAUFRECHT, Petitioner,**

v.

**SUBVERSIVE ACTIVITIES CONTROL BOARD, Respondent.**

**No. 14363.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 10, 1962.

Decided June 6, 1963.

Mr. Joseph Forer, Washington, D. C., argued the motion to dismiss and vacate for petitioner.

Mr. Robert S. Brady, Atty., Dept. of Justice, argued in opposition to the motion for respondent. On respondent's answer were Mr. Frank R. Hunter, Jr., Gen. Counsel, Subversive Activities Control Bd., and Messrs. Kevin T. Maroney and George B. Searls, Attys., Dept. of Justice.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and DANAHER, Circuit Judge.

PRETTYMAN, Senior Circuit Judge.

This is one of the cases to which we referred in Labor Youth League v. Subversive Activities Control Board.[1] The American Peace Crusade is—or was— an unincorporated association, created in February, 1951, with a National Committee and Resident Board but without a charter or constitution and without provision for formal membership in the national body. The National Committee had sixty members, of whom forty composed the Resident Board. The Crusade was active in many ways in programs for world peace. On August 1, 1955, the Attorney General filed with the Subversive Activities Control Board a petition in which he alleged that the Crusade was

1.  116 U.S.App.D.C. ——, 322 F.2d 364 (1963).

a Communist-front organization within the meaning of Section 7 of the Subversive Activities Control Act of 1950 [2] and must register as such. On October 3, 1955, our present petitioner, Betty Haufrecht, moved the Board for permission to intervene in that proceeding, saying that she had been the last acting administrative secretary of the Crusade and that the organization had formally dissolved on September 25, 1955. Intervention was granted. She moved that the petition be dismissed; the motion was denied. The matter proceeded to hearing. Intervenor and her counsel appeared; no appearance was entered for the respondent organization. The Attorney General presented witnesses who testified as to the organization, management, control and activities of the Crusade up to the then-present. Mrs. Haufrecht appeared and testified. She said that on September 25, 1955, a joint meeting of the National Committee and the Resident Board had been held and a resolution adopted to dissolve the Crusade. She said that consequent to that resolution the office of the Crusade was closed and the assets used to pay debts, and that there were no assets left. She said that notice of the dissolution was given the press and mailed to all on the Crusade's mailing lists, and that since that date the Crusade had neither held nor sponsored any meetings, had issued no literature, and had not engaged in the work in which it had theretofore been engaged. She said that the Crusade was not then (April 11, 1956) in existence.

The Government did not dispute the meeting of the Committee and Board on September 25th but presented a witness, one Wallace, who said that he attended a preliminary meeting in August, 1955, at which it was decided that the Crusade should be dissolved but that it could be rebuilt and resume activities when conditions might permit. Wallace presented as an exhibit a copy of a form letter dated October 4, 1955, signed by Mrs. Haufrecht, which announced the dissolution and added that undoubtedly those "formerly of the American Peace Crusade family—will continue to work unceasingly to make lasting peace a reality." [3] Mrs. Haufrecht denied that any such meeting as that described by Wallace had occurred, but the Board made a comparative evaluation of the testimony and accepted Wallace's presentation. The Board concluded that the fair and reasonable finding was that the Crusade, in September, 1955, "took formal steps aimed at dissolving the organization because of the filing of the petition here involved but intended in so doing that individuals and local groups would continue functions of the American Peace Crusade and be maintained and available for possible resumption as the American Peace Crusade when conditions might permit." The Board made findings and concluded that the Crusade was a Communist front and that, since it had been in active existence when the Attorney General's petition was filed, its members could not by thereafter terminating their relationship avoid responsibility for registering. Accordingly, on July 26, 1957, the Board issued an order requiring registration.

Mrs. Haufrecht petitioned this court for review. She then moved the court to vacate the Board's order and dismiss the proceedings as moot. The court, on January 8, 1962, remanded the case to the Board for the purpose of determining whether there had been any change in the circumstances of the Crusade's existence subsequent to the order. The case had been held in abeyance pending a final determination of the nature of the Communist Party, upon which determination the result of this present case depended.

---

2. 64 Stat. 993, as amended, 50 U.S.C. § 786.
3. The Government seems to regard this latter quoted expression as an implicit declaration of intention to revive the defunct organization. It does not seem to us to be so. Rather it seems to us to be a declaration of unshaken belief in the cause of peace regardless of organizational vehicles, and such a view reflects an acceptance of finality to the demise of the organization as such.

A hearing was held by the Board. Mrs. Haufrecht appeared and testified and quite flatly said that to her knowledge there had been no meetings and no activities of the Crusade since the date of the Board's order (July 26, 1957), no officers, and no issuance of publications or literature; and that there had been no talk of reviving the organization and "no good possibility" of reviving it.

Counsel for the Attorney General told the Board the Government had no evidence which would indicate that the Crusade was operating at that time. The Board found that subsequent to its order there had. been no activities or operations by the Crusade. Thus on this record there have been for almost eight years no activities, no officers or offices, no assets of this petitioner, once an unincorporated association. The Government indicates to us that it does not oppose the termination of this litigation, so long as the Board's order is not vacated.

It is clear from the foregoing that the discussion in our opinion in Labor Youth League, supra, applies here. A similar order will be entered. The case will be remanded to the Board with permissive direction to place it in indefinite abeyance pending further order of the Board.

We add one further comment. The papers in this file contain many references to "mootness" and "moot". Those are words of varied and uncertain meanings. The dictionary gives as the first meaning of "moot", "subject to argument or discussion; debatable; doubtful." A more frequent meaning is "mock". In the present proceeding it is used to mean non-existent in fact, i. e., hypothetical. We have avoided this semantic quagmire. Our view, as expressed in the Labor Youth case, is that, under circumstances such as are present in these cases, a court ought not to finalize an order requiring a presently non-existent organization to register; but at the same time we believe that under the circumstances a court ought not to vacate the order and thus wipe out the preceding proceedings, had when the Board had jurisdiction. So-called "mootness", as we pointed out, requires an appellate court to dispose of the case as justice under the circumstances dictates.[4]

---

4. See Walling v. James V. Reuter Co., 321 U.S. 671, 64 S.Ct. 826, 88 L.Ed. 1001 (1944).